**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Phelps Mineral Holdings, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING MOTION FOR** |
| | ) | **PARTIAL SUMMARY JUDGMENT** |
| v. | ) | |
| | ) | |
| Continental Resources, Inc., | ) | Case No.: 1:23-cv-00219 |
| | ) | |
| Defendant. | ) | |

Now before the court is Defendant Continental Resources, Inc.'s ("Defendant") *Motion for Partial Summary Judgment.* (Doc. No. 40). For the reasons articulated below, the motion (Doc. No. 40) is denied.

## I.    BACKGROUND

On November 13, 2023, Plaintiff Phelps Mineral Holdings, LLC ("Plaintiff") initiated the above-captioned action by Complaint against Defendant for (1) breach of the Phelps Lease; (2) breach of obligation to pay royalties pursuant to North Dakota Century Code Section 47-16-39.1; (3) declaratory judgment; and (4) accounting. (Doc. No. 1).

Plaintiff is a foreign limited liability company with its principal address in Bend, Oregon, in active and good standing in the State of North Dakota. (Doc. No. 1 at 1). Plaintiff issues no stock and consists of five members located in the states of Washington and Oregon. (*Id.*). Defendant is an Oklahoma corporation with its principal address in Oklahoma City, Oklahoma, that is registered as a foreign corporation in the State of North Dakota, in active and good standing. (*Id.*).

Plaintiff owns oil, gas, and other minerals at certain real property located in McKenzie County, North Dakota. (*Id.* at 2). Specifically,

Township 153 North, Range 94 West
Section 5: Lots 2, 3, 4, SW/4NE/4, S/2NW/4, W/2SE/4, and SW/4

Township 154 North, Range 94 West
Section 32: Lot 3, SW/4, W/2SE/4

(hereinafter, the "Property").

On October 24, 2012, Plaintiff's predecessor in interest, the Phelps Mineral Trust, entered into an oil and gas lease ("Phelps Lease") for the Property with Defendant. (*Id.*). The Lease was recorded and includes an "Oil and Gas Lease Rider" clause. (*Id.*). The Lease further prohibits Defendant from taking deductions or reducing Plaintiff's royalties for charges related to compressing or transporting any "produced substances" from the Property, and that Plaintiff was to receive the same price as the Lessee for its share of production. (*Id.* at 3).

Plaintiff alleged that Defendant has taken deductions from its royalties and reduced its royalty payments from the production of oil and gas from the Property as related to charges for compression and transportation. (*Id.*). Based on these deductions and reductions, Plaintiff contended that Defendant has violated and continues to violate the Phelps Lease and is in breach of the Lease due to continued deductions from its royalties, reduction of royalties, and for charges related to compression and transportation. (*Id.*).

On April 13, 2026, Defendant filed a *Motion for Partial Summary Judgment*. (Doc. No. 41). On May 11, 2026, Plaintiff filed a response, and on May 22, 2026, Defendant filed its reply. (Doc. Nos. 50, 51). This matter is now ripe for the court's review and consideration.

## II.    LEGAL STANDARD

Federal Rules of Civil Procedure 56 governs summary judgment. "A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." *Id.* In terms of whether facts are material, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine," if the evidence is enough that a reasonable jury could return a verdict in favor of the nonmoving party. *Id.*

Once the moving party has demonstrated a sufficient showing, the burden rests on the nonmoving party to provide specific facts, whether through affidavits or other evidence, that there is a genuine issue of material facts. *Hill v. Payne*, No. 621CV06029SOHBAB, 2023 WL 2192961, at *4 (W.D. Ark. Feb. 23, 2023); *see National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999). The nonmoving party may not rely only on allegations or denials but must provide specific facts showing there is a genuine issue for trial. *Twardowski v. Bismarck Police Dep't*, No. 1:17-CV-110, 2017 WL 8791103, at *2 (D.N.D. Dec. 22, 2017), *aff'd*, 754 F. App'x 492 (8th Cir. 2019).

## III.   DISCUSSION

In support of its motion, Defendant argues, "[p]artial summary judgment is proper on the legal issue of whether the coded 'Adjustments' on the check details from Continental to Plaintiff constitute improper 'deductions' from Plaintiff's gas royalty payments in violation of the Phelps Lease." (Doc. No. 40 at 2). Defendant further contends that Plaintiff's breach of contract claim fails with respect to the gas royalties because adjustments reported on Plaintiff's revenue statements were not deductions taken by Defendant and do not reduce Plaintiff's royalty. (Doc. No. 41 at 20). Plaintiff's declaratory judgment claim fails because the adjustments reported are not deductions taken by Defendant and do not reduce Plaintiff's royalty. (*Id.*). Finally, Plaintiff's claim

alleging Defendant's breach of its obligation to pay royalties fails with respect to the gas royalties because the breach of lease and declaratory judgment claims fail. (*Id.*).

The Phelps Lease contains an "Oil and Gase Lease Rider." This "Lease Rider" provides that, "[r]egardless of language to the contrary contained in the oil and gas lease the following shall control." (Doc. No. 41-1 at 7) (emphasis omitted). This controls over any contrary language included in the primary Lease. The main topic of issue in the instant motion revolves around the parties' interpretation of Paragraph Eight of the "Oil and Gas Lease Rider." (*See Id.*).

> 8. GAS & OIL PRICING. Lessor shall be paid for gas and oil based upon the rate Lessee receives for gas or oil it sells at the point of first sale of such production to a purchaser who is not an "affiliate" of Lessee; and, price paid Lessor for Lessor's share of produced substances shall be the same price that Lessee receives for Lessee's share of production; however, Lessor shall be paid for produced substances based upon the rate Lessee receives for the same price it sells produced substances for; and lessee shall not deduct any charges related to compressing or transporting said produced substances. In no event shall Lessor receive less than a net "zero" for gas sold. As used herein, "affiliate" means (i) a corporation, joint venture, partnership or other entity that owns more than ten percent (10%) of the outstanding voting interest of Lessee or in which Lessee owns more than ten percent (10%) of the outstanding voting interest; or (ii) a corporation, joint venture, partnership or other entity in which, together with Lessee more than ten percent (10%) of the outstanding voting interest of both the Lessee and the other corporation, joint venture partnership or other entity is owned or controlled by the same person or group of persons.

(*Id.*).[1] The parties specifically focus on the construction of this provision as it pertains to requiring Defendant to pay royalties to Plaintiff based on the price Defendant receives at the point of first sale and the prohibition on Defendant from taking deductions from Plaintiff's royalties for post-production compression or transportation costs. (Doc. No. 41 at 6). Defendant argues partial summary judgment is proper as the gas royalties Plaintiff characterizes as "deductions" are actually adjustments applied by ONEOK Rockies Midstream, LLC ("OENOK"), an unaffiliated third-party gas purchaser, pursuant to its contract with Defendant. (*Id.*). Plaintiff in turn argues that the alleged

---

[1] Plaintiff is the Lessor and Defendant is the Lessee. (*See* Doc. No. 41-1 at 7).

adjustments to the gas royalties result in the same outcome as taking deductions, and as such, the motion should be denied.

In cases of diversity, a federal court applies the substantive law of the forum state. *Highline Expl., Inc. v. QEP Energy Co.*, No. 1:19-CV-134, 2021 WL 4847999, at *3 (D.N.D. Oct. 18, 2021), *aff'd*, 43 F.4th 813 (8th Cir. 2022); *see El Petron Enters, LLC v. Whiting Res. Corp.*, No. 1:16-CV-090, 2018 WL 1322391, at *3 (D.N.D. Mar. 14, 2018). Pursuant to North Dakota law, assignments, deeds, and leases are interpreted the same as contracts. *Hallin v. Inland Oil & Gas Corp.*, 2017 ND 254, ¶ 8, 903 N.W.2d 61.

> The construction of a written contract to determine its legal effect is a question of law. Contracts are construed to give effect to the mutual intention of the parties at the time of contracting. The parties' intention must be ascertained from the writing alone, if possible. A contract must be construed as a whole to give effect to each provision if reasonably practicable. We will not consider extrinsic evidence when a lease is unambiguous and the parties' intent can be ascertained from the writing alone. A contract is ambiguous when reasonable arguments can be made for different positions on its meaning. Whether an ambiguity exists is a question of law.

*Highline Exp., Inc.*, 2021 WL 4847999, at *3 (quoting *Blasi v. Bruin E&P Partners*, LLC, 2021 ND 86, ¶ 10, 959 N.W.2d 872). Ambiguous and unclear contracts are to be construed most strongly against the party which caused the uncertainty to exist, and if such a conflict exists between a specific and general contract provision, the specific provision controls. *Oaks Farming Ass'n v. Martinson Bros.*, 318 N.W.2d 897, 908 (N.D. 1982); *see also* N.D.C.C. § 9-07-19.

In determining whether post-production costs are deductible from the royalty, the terms of the lease, nature of costs and expenses to be deducted, and the type of royalty must be considered. *Highline Exp., Inc.*, 2021 WL 4847999, at *3; *see Bice v. Petro-Hunt, L.L.C.*, 2009 ND 124, ¶ 12, 768 N.W.2d 496. "Post-production costs are the expenses incurred in bringing the product to market including processing, compression, transportation, marketing, and other costs necessary to prepare raw oil or gas for sale." *Highline Exp., Inc.*, 2021 WL 4847999, at *4; *Burlington Res. Oil*

5

*& Gas. Co. LP v. Texas Crude Energy, LLC*, 573 S.W.3d 198, 203 (Tex. 2019). Because the "Lease Rider" specifically contemplates the compression or transportation of produced substances, it deals with post-production costs.

Here, the language at issue in Paragraph Eight is unambiguous and presents a question of law. As previously noted, the relevant clause of Paragraph Eight at issue states in part as follows:

> Lessor shall be paid for gas and oil based upon the rate Lessee receives for gas or oil it sells at the point of first sale of such production to a purchaser who is not an "affiliate" of Lessee; and, price paid Lessor for Lessor's share of produced substances shall be the same price that Lessee receives for Lessee's share of production; however, Lessor shall be paid for produced substances based upon the rate Lessee receives for the same price it sells produced substances for; **and lessee shall not deduct any charges related to compressing or transporting said produced substances.**

(Doc. No. 41-1 at 7) (emphasis added).

Similar, though not the same, arguments have been raised in the State of North Dakota. Notably, the North Dakota Supreme Court in *Newfield Exploration Company* determined that "[g]ross proceeds from which the royalty payments under the leases are calculated may not be reduced by an amount that either directly or indirectly accounts for post-production costs incurred to make the gas marketable." *Newfield Expl. Co. v. N. Dakota Bd. Of Univ. & Sch. Lands*, 2019 ND 193, ¶ 12, 931 N.W.2d 478. In making this determination, the North Dakota Supreme Court found that full consideration paid to Newfield was not determined until after ONEOK incurred costs associated with making the gas marketable and selling the marketable gas. *Id.* at ¶ 11. Newfield's compensation was calculated based on the amount ONEOK received for the marketable gas, and in turn, Newfield attempted to base the State's royalties on this amount, which had been reduced to account for expenses ONEOK incurred in making the gas marketable. *Id.* In concluding the royalty payments under the lease could not be reduced to account for post-production costs, the North Dakota Supreme Court opined:

6

> "Here, Newfield unquestionably benefits from [ONEOK's] expenditures to make the gas marketable. Calculation of the royalties paid to the State based on an amount that has been reduced to account for expenses incurred to make the gas marketable, even though the cost to make the gas marketable only indirectly benefits Newfield, is contrary to the leases."

*Id.*

In this case, the "Lease Rider" specifically states that Defendant shall not deduct any charges related to compressing or transporting the produced substances. There are no caveats or exceptions. The plain language of the "Lease Rider" does not allow for Defendant to make either "deductions" or "adjustments" based on its contract with ONEOK and explicitly states that regardless of the language contained in the Lease, the provisions of the "Lease Rider" will control when there is language to the contrary.

Even if the court were to have found this clause was ambiguous as to the royalties and post-production costs, the conclusion would remain the same. *See Hallin*, 2017 ND 254, ¶ 9, 903 N.W.2d 61 ("If a contract is ambiguous, extrinsic evidence may be considered to determine the parties' intent, and the contract terms and parties' intent becomes questions of fact."). The North Dakota Supreme Court previously agreed with the language of the Kansas Supreme Court regarding the construction of oil and gas leases:

> Construction of oil and gas leases containing ambiguities is in favor of the lessor and against the lessee for the reason that the lessee usually provides the lease form or dictates the terms thereof and if such lessee is desirous of more complete coverage, the lessee has the opportunity to protect itself by the manner in which it draws the lease.

*West v. Alpar Res., Inc.*, 298 N.W.2d 484, 490-91 (N.D. 1980) (quoting *Gilmore v. Superior Oil Co.*, 192 Kan. 388, 388, 388 P.2d 602 (1964)). Strong construction against the lessee is supported by the rationale that the lessor normally knows nothing of the applicable law in lease construction, while the operator is typically well informed based on years of experience. *West*, 298 N.W.2d at 491; *see Ladd v. Upham*, 58 S.W.2d 1037, 1039 (Tex.Civ.App. 1933), *aff'd*, 128 Tex. 14, 95 S.W.2d

365 (1936). The North Dakota Supreme Court in *West* concluded that consistent with its view that the lease must be construed most strongly against Alpar Resources, Inc., the Wests were entitled to royalty payments from the sale of gas without deductions for the cost of extracting hydrogen sulfide and without any other deduction for costs incurred by Alpar.[2] *West*, 298 N.W.2d at 491.

The court agrees with the analysis of the North Dakota Supreme Court. If Defendant had intended for Plaintiff's royalties to be calculated after "adjustment" by an unaffiliated third-party, the Lease should have been construed with this view in mind. A plain reading of the "Lease Rider," though stating the parties are to equally share the proceeds from the produced substances, also provides the caveat that Plaintiff was not to have deductions related to the compression or transport of the substance. While understanding of Defendant's position that it is "simply reporting the adjustments made by ONEOK," which are part of a formula for determining a purchase price, the fact of the matter is that while the contract between Defendant and ONEOK may permit the deduction of costs for post-production fees, the contract at issue here between Plaintiff and Defendant, does not.

## IV.   CONCLUSION

For the reasons articulated above, the court **DENIES** Defendant's *Motion for Partial Summary Judgment*. (Doc. No. 40).

**IT IS SO ORDERED.**

Dated this 9th day of June, 2026.

*/s/ Clare R. Hochhalter*
Clare R. Hochhalter, Magistrate Judge
United States District Court

---

[2] Also relevant is the North Dakota Supreme Court's finding that "If Alpar's predecessor in interest had desired to limit the royalty payments under the lease to a fraction of the net proceeds received from the sale of the gas after allowance for a deduction of certain costs such as the cost of extracting hydrogen sulfide, it could have easily included express language to that effect in the lease." *West*, 298 N.W.2d at 491.