**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Phelps Mineral Holdings, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING MOTION** |
| | ) | **FOR SUMMARY JUDGMENT** |
| v. | ) | **AS A MATTER OF LAW** |
| | ) | |
| Continental Resources, Inc., | ) | Case No.: 1:23-cv-00219 |
| | ) | |
| Defendant. | ) | |

---

On September 4, 2026, Plaintiff Phelps Mineral Holdings, LLC ("Plaintiff") filed a *Motion for Summary Judgment as a Matter of Law*. (Doc. No. 5). Defendant Continental Resources, Inc. ("Defendant") filed a response on October 2, 2026, and Plaintiff filed a reply on October 16, 2026. (Doc. Nos. 57, 58). For the reasons articulated below, the court grants Plaintiff's motion.

## I. BACKGROUND

The following facts are taken from the parties' pleadings. They are presumed to be true for purposes of this order.

Plaintiff owns oil, gas, and other minerals at certain real property located in McKenzie County, North Dakota. (Doc. No. 1 at 2). This includes the following:

<u>Township 153 North, Range 94 West</u>
Section 5: Lots 2, 3, 4, SW/4NE/4, W/2SE/4, and SW/4

<u>Township 154 North, Range 94 West</u>
<u>Section 32: Lot 3, SW/4, W/2SE/4</u>

(hereinafter, the "Property").

On October 24, 2012, Plaintiff's predecessor in interest, Phelps Mineral Trust, entered an oil and gas lease ("Phelps Lease") with Defendant for the Property. (*Id.*). The Phelps Lease was recorded and includes an "Oil and Gas Lease Rider" ("Lease Rider") clause. (*Id.*). The Phelps Lease prohibits Defendant from taking deductions or reducing Plaintiff's royalties for charges

related to compressing or transporting any "produced substances" from the Property, and further provided Plaintiff was to receive the same price as the Lessee for its share of production. (*Id.* at 3).

In March 2017, Defendant entered into a contract with ONEOK Rockies Midstream, L.L.C. ("ONEOK"), whereby ONEOK agreed to purchase gas produced under the Phelps Lease along with other leases operated by Defendant in Dunn, Williams, and McKenzie Counties. (Doc. No. 57 at 12). Pursuant to Defendant's contract with ONEOK, title to the gas produced from the Property passes to ONEOK at a Receipt Point at or near the Phelps Lease boundary, and in return, ONEOK pays Defendant based on a pricing formula in the ONEOK Contract. (*Id.* at 12-13).

On November 13, 2023, Plaintiff initiated the above-captioned action by Complaint against Defendant for (1) breach of the Phelps Lease; (2) breach of obligations to pay royalties pursuant to North Dakota Century Code Section 47-16-39.1; (3) declaratory judgment; and (4) accounting. (Doc. No. 1).

Plaintiff alleged that Defendant has taken deductions from its royalties and reduced its royalty payments from the production of oil and gas from the Property as related to charges for compression and transportation. (Doc. No. 1 at 3). Based on the deductions and reductions, Plaintiff argued that Defendant violated and continues to violate the Phelps Lease and is in breach of contract due to the continued deductions from its royalties, reduction of royalties, and charges related to compression and transportation. (*Id.*).

On April 13, 2026, Defendant filed a *Motion for Partial Summary Judgment* (Doc. No. 40), arguing that partial summary judgment was proper as to the gas royalties because the Adjustments appearing in Plaintiff's revenue statements were not deductions from Plaintiff's royalties, the Adjustments reported on Plaintiff's check details reflected a contractually stipulated calculation of the price Defendant receives at the point of first sale to a non-affiliate, and the alleged breach of

Defendant's obligation to pay royalties under North Dakota law with respect to the gas royalties failed because the breach of lease and declaratory judgment claims fail. (*Id.* at 3). The court denied the motion on June 9, 2026. (Doc. No. 52).

On September 4, 2026, Plaintiff filed the instant motion, alleging summary judgment is proper as there are no genuine disputes as to any material facts and it is entitled to judgment as a matter of law. (Doc. No. 55).

## II. LEGAL STANDARD

Summary judgment motions are governed by Federal Rules of Civil Procedure 56. "A party may move for summary judgment, identifying each clam or defense – or part of each claim or defense – on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* In terms of whether facts are material, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine," if the evidence is enough that a reasonable jury could return a verdict in favor of the nonmoving party. *Id.*

Once the moving party has demonstrated a sufficient showing, the burden rests on the nonmoving party to provide specific facts, whether through affidavits or other evidence, that there is a genuine issue of material facts. *Hill v. Payne*, No. 621CV06029SOHBAB, 2023 WL 2192961, at *4 (W.D. Ark. Feb. 23, 2023); *see National Bank of Commerce v. Dow Chemical Co.*, 165 F.3 602, 607 (8th Cir. 1999). The nonmoving party may not rely only on allegations or denials but must provide specific facts showing there is a genuine issue for trial. *Twardowski v. Bismarck*

*Police Dep't*, No. 1:17-CV-110, 2017 WL 8791103, at *2 (D.N.D. Dec. 22, 2017), *aff'd*, 754 F. App'x 492 (8th Cir. 2019).

"A federal court sitting in diversity applies the substantive law of the forum state. Under North Dakota law, assignments, deeds, and leases are interpreted in the same manner as contracts." *Highline Expl., Inc. v. QEP Energy Co.*, No. 1:19-CV-134, 2021 WL 4847999, at *3 (D.N.D. Oct. 18, 2021), *aff'd*, 43 F.4th 813 (8th Cir. 2022) (internal quotations and citations omitted).

> The construction of a written contract to determine its legal effect is a question of law. Contracts are construed to give effect to the mutual intention of the parties at the time of contracting. The parties' intention must be ascertained from the writing alone, if possible. A contract must be construed as a whole to give effect to each provision if reasonably practicable.

*Blasi v. Bruin E&P Partners, LLC*, 2021 ND 86, ¶ 10, 959 N.W.2d 872 (internal citations and quotations omitted). When a lease is unambiguous and the parties' intent can be ascertained from the writing alone, extrinsic evidence will not be considered. *Id.* The existence of an ambiguity in a contract is a question of law. *Id.* A contract's ambiguity can be determined by whether reasonable arguments may be made for different interpretations of its meaning. *Id.* Ambiguous and unclear contracts are to be construed most strongly against the party which caused the uncertainty to exist, and if such a conflict exists between a specific and general contract provision, the specific provision controls. *Oaks Farming Ass'n v. Martinson Bros.*, 318 N.W.2d 897, 908 (N.D. 1982); *see also* N.D.C.C. § 9-07-19.

When determining whether post-production costs are deductible from the royalty, the terms of the lease, nature of costs and expenses to be deducted, and the type of royalty must be considered. *Highline Expl., Inc.*, 2021 WL 4847999, at *3; *see Bice v. Petro-Hunt, L.L.C.*, 2009 ND 124, ¶ 12, 768 N.W.2d 496. "Post-production costs are the expenses incurred in bringing the product to market including processing, compression, transportation, marketing, and other costs

necessary to prepare raw oil or gas for sale." *Highline Expl., Inc.*, 2021 WL 4847999, at *4; *Burlington Res. Oil & Gas Co. LP v. Texas Crude Energy, LLC*, 573 S.W.3d 198, 203 (Tex. 2019).

## III. DISCUSSION

Plaintiff's primary argument for summary judgment is that Defendant violated the Phelps Lease by ultimately reducing the gas royalties for charges related to compressing or transporting the gas, in violation of the gas and oil clause of the Lease Rider.[1] This provision states as follows:

> 8. GAS & OIL PRICING. Lessor shall be paid for gas and oil based upon the rate Lessee receives for gas or oil it sells at the point of first sale of such production to a purchaser who is not an "affiliate" of Lessee; and, price paid Lessor for Lessor's share of produced substances shall be the same price that Lessee receives for Lessee's share of production; however, Lessor shall be paid for produced substances based upon the rate Lessee receives for the same price it sells produced substances for; and lessee shall not deduct any charges related to compressing or transporting said produced substances. In no event shall Lessor receive less than a net "zero" for gas sold. As used herein, "affiliate" means (i) a corporation, joint venture, partnership or other entity that owns more than ten percent (10%) of the outstanding voting interest of Lessee or in which Lessee owns more than ten percent (10%) of the outstanding voting interest; or (ii) a corporation, joint venture, partnership or other entity in which, together with Lessee more than ten percent (10%) of the outstanding voting interest of both the Lessee and the other corporation, joint venture partnership or other entity is owned or controlled by the same person or group of persons.

(Doc. No. 1-1 at 3).

Defendant opposes Plaintiff's request for summary judgment and requests this court deny the motion. In support of this request, Defendant points to this court's previous ruling on its motion for partial summary judgment.

> In denying Continental's previous motion for summary judgment, the Court concluded that Continental's failure to remit royalty based on the additional value of the ONEOK pricing adjustments violated the Lease. Continental respectfully submits that the Court's prior construction of the Lease fails to give effect to all the terms these parties chose to express their agreement, as required by North Dakota law.

(Doc. No. 57 at 8).

[1] The Lease Rider provides that, "[r]egardless of language to the contrary contained in the oil and gas lease the following shall control." (Doc. No. 1-1 at 3).

Defendant first argues that the dispute is governed by North Dakota principles of contract construction. (Doc. No. 57 at 19-20). The parties do not dispute this. (*See* Doc. No. 56 ("A federal court sitting in diversity applies the substantive law of the forum state.") (internal citations omitted)).

Much of Defendant's remaining argument focuses on the construction and interpretation of the Phelps Lease. Defendant contends that under the governing rules of construction, i.e. North Dakota principles of contract construction, the Phelps Lease must be construed as a whole to give effect to each of its terms and that its construction gives meaning to and harmonizes each of the terms in Paragraph 8, while Plaintiff's construction rewrites Paragraph 8 and nullifies terms.

This court already addressed many of the issues raised in Defendant's briefing in its June 9, 2026, Order Denying Motion for Partial Summary Judgment and adopts the same findings here. (Doc. No. 52). Contrary to Defendant's argument, the court's prior construction of the Phelps Lease gave effect to all the terms expressed in the agreement, as required by North Dakota law and supported by prior North Dakota Supreme Court rulings.

To the extent Defendant argues the court's prior construction was incorrect, the court shall provide the following basis for its continued construction. The Phelps Lease contains multiple relevant provisions, including: "Notwithstanding items 3.1-3.3 hereinabove, if any such costs result in enhancing the value of the marketable oil, gas, (or other products produced in association with oil or gas) such costs may be deducted from Lessor's share of production, so long as they are based on Lessee's actual cost of such enhancements." (Doc. No. 1-1 at 1). Even with this provision, the Lease Rider, including Paragraph 8, controls regardless of any contrary language contained in the Lease.

The court again turns its attention to the North Dakota Supreme Court's ruling in *Newfield Exploration Company*.

> The parties agree had Newfield itself incurred expenses to make the gas marketable, or if Newfield had directly paid Oneok to make the product marketable for Newfield to sell, the State would be compensated based on the price received from the sale of the gas after it was made marketable and without reduction for the costs required to make the product marketable. The State argues because the price paid to Newfield by Oneok is reduced to account for the cost of processing the gas into a marketable form, the result is no different than if Newfield itself had incurred the expense to process the gas into marketable form or retained title to the gas and paid Oneok to process the gas into marketable form. The State contends it is being required to share in the post-production costs contrary to the leases.
>
> Newfield asserts the plain language of the leases requires the State's royalties to be calculated on the payment Newfield receives for the gas from Oneok, regardless of whether that payment is reduced to account for expenses incurred by Oneok to make the gas marketable. Essentially, Newfield argues it can pay a royalty based on a payment that has been reduced to account for the expense of making the gas marketable, as long as the expense is incurred by a third party.

*Newfield Expl. Co. v. State ex rel. N. Bakota Bd. of Univ. & Sch. Lands*, 2019 ND 193, ¶¶ 9-10, 931 N.W.2d 478. In this case the parties' lease included a subpart unambiguously providing that the State's royalty must include the value of any consideration benefiting Newfield. *Id.* at ¶ 11. Based on this subpart, the Supreme Court reversed the district court's judgment, finding that Newfield benefited from ONEOK's expenditures to make the gas marketable, and the calculation of royalties paid to the State based on the reduced amount to account for the expense incurred in making the gas marketable was contrary to the leases. *Id.*

Defendant makes the argument that *Newfield Exploration Company* is distinguishable from this case as the lease terms are "drastically different." (Doc. No. 57 at 33). Defendant argues that the opinion must be narrowly construed because the obligation to pay royalties on the post-sale, post-production expenses were anticipated and included in the definition of the royalty and not premised on any default rule overlaying all oil and gas leases. (*Id.*).

In its consideration of *Newfield Exploration Company* in its previous Order, the court made clear that the cases were similar, but not the same. (Doc. No. 52 at 6). Even acknowledging that the instant matter deals with a "no-deductions clause" as compared to the specifically defined post-sale, post-production royalty's subpart considered by the North Dakota Supreme Court, the court's decision does not change. The North Dakota Supreme Court reached its conclusion through contract interpretation. The court does the same here.

While there is no specific provision unambiguously providing that Plaintiff's royalties must include the value of any consideration that directly or indirectly benefits Defendant like there was in *Newfield Exploration Company*, the Lease Rider is instructive. As previously determined, the Lease Rider states that the "lessee shall not deduct any charges related to compressing or transporting said produced substances." (Doc. No. 1-1 at 3). Defendant argues the plain meaning of the phrase, "lessee shall not deduct," requires it to refrain from reducing or subtracting certain charges, while "Plaintiff construes it to mean that if [Defendant's] purchaser adjusts its purchase price from a downstream valuation point to reflect what it is willing to pay at the point of sale, [Defendant] must add those amounts to the price it receives." (Doc. No. 57 at 26-27).

Defendant construes Plaintiff's interpretation to add terms to the lease. However, while the court agrees that the plain meaning of the phrase, "lessee shall not deduct," should be taken to mean that Defendant must refrain from reducing or subtracting certain charges, it does not agree with Defendant's interpretation of Plaintiff's construction of the term to add terms to the lease. The relevant phrase states more fully, "… however, Lessor shall be paid for produced substances based upon the rate lessee receives for the same price it sells produced substances for; and lessee shall not deduct any charges related to compressing or transporting said produced substances." (Doc. No. 1-1 at 3). There is no exception permitting Defendant to reduce royalty payments based on its

contract with ONEOK and ONEOK's expenditures to make the product marketable.[2] Paragraph 8 clearly provides that Defendant will not deduct any charges pertaining to compressing or transporting the produced substances, period. The issue here, as was the issue at the time the court ruled on the motion for partial summary judgment, is the construction of the contract between Plaintiff and Defendant, not the construction of the contract between Defendant and ONEOK.

Defendant attempts to poke holes in the court's prior construction of the lease by pointing to the Lease Rider's modification of the Lease's valuation point from "at the well" or "into the pipeline," to the "point of first sale" to a non-affiliate. (Doc. No. 57 at 22-23). Defendant argues that Paragraph 8 requires royalty payments to be based on the price actually received, "not on the amounts a buyer received after the buyer changed the gas and sold its components downstream." (*Id.* at 23). Defendant likewise argues that Plaintiff's reliance on *Kittleson v, Grynberg Petroleum Co.*, to support its position that a no deductions clause prevails over other terms in the lease cannot be applied here as there is no such default rule and *Kittleson* solely concerned the interplay between a no deductions clause and a market value at the well royalty term. (*Id.* at 34-35). Defendant contends the instant case is unlike *Kittleson* as the Phelps Lease acknowledges the gas royalty includes a buyer's downward pricing adjustments by providing the net zero floor, and the non-affiliate condition was included to protect Plaintiff from unfair pricing terms. (*Id,* at 36).

Plaintiff cites *Kittleson* to support its contention that the Phelps Lease must be construed as a whole to give effect to each provision, including the prohibition against deductions for post-

[2] This court previously determined that the Lease Rider specifically states Defendant shall not deduct any charges related to compressing or transporting the produced substances. (Doc. No. 52 at 7). It also found that, "[t]here are no caveats or exceptions. The plain language of the 'Lease Rider' does not allow for Defendant to make either 'deductions' or 'adjustments' based on its contract with ONEOK and explicitly states that regardless of the language contained in the Lease, the provisions of the 'Lease Rider' will control when there is language to the contrary. (*Id.*).

production compression and transportation costs, and its construction of the Lease Rider honors the terms of the Lease. (*See generally* Doc. No. 59 at 5-8).

In *Kittleson*, the North Dakota Supreme Court compared the contract at issue with its adoption of the "at the well" rule in its interpretation of "market value at the well" in *Bice v. Petro-Hunt, L.L.C.*, 2009 ND 124, 768 N.W.2d 496. *Kittleson v. Grynberg Petroleum Co.*, 2016 ND 44, ¶ 11, 876 N.W.2d 443. The North Dakota Supreme Court determined:

> Here, similar to *Bice*, the royalty clause of the lease requires Grynberg to pay Kittleson the market value at the well for all gas produced from the leased premises. However, unlike *Bice*, the royalty clause contains additional language stating, "provided however, that there shall be no deductions from the value of Lessor's royalty of any required processing, cost of dehydration, compression, transportation, or other matter to market such gas."

*Id.* at ¶ 13. Pursuant to the State of North Dakota's rules of contract interpretation, if conflict exists between a specific and general contract provision, the more specific provision qualifies and prevails over the more general provision. *Id.* at ¶ 14. The first clause of Paragraph 8 is relevant here.

> Lessor shall be paid for gas and oil based upon the rate Lessee receives for gas or oil it sells at the point of first sale of such production to a purchaser who is not an "affiliate" of Lessee; and, price paid Lessor for Lessor's share of produced substances shall be the same price that Lessee receives for Lessee's share of production; however, Lessor shall be paid for produced substances based upon the rate Lessee receives for the same price it sells produced substances for; and lessee shall not deduct any charges related to compressing or transporting said produced substances.

(Doc. No. 1-1 at 3). This clause contains both general valuation language pertaining to the payment the lessor and lessee are entitled to, as well as the prohibition on deductions related to compression or transportation. Based on North Dakota principles of construction and the North Dakota Supreme Court's analysis in *Kittleson*, the specific provision qualifies the general provision. This means the most specific no-deduction language is controlling. *See Kittleson*, 2016 ND 44, ¶ 15, 876 N.W.2d 443 ("We hold the more specific 'no deductions' language qualifies and prevails over 'market

value at the well.' We conclude that under the 'no deductions' language of the royalty clause, Grynberg is not allowed to deduct from Kittleson's royalty the post-production costs required to make the gas marketable."). The North Dakota Supreme Court concluded that the no deductions language in the royalty clause altered the lease's meaning and any deductions for post-production costs were to be added back to Kittleson's royalty. *Id.* ¶ 16. This court concurs with the Supreme Court's reasoning and finds that any deductions taken by Defendant for post-production charges relating to compressing or transporting the produced substances must be added back to Plaintiff's royalty.

Defendant makes the alternative argument that in the event "shall not deduct" requires payment of royalty on the amount of third-party pricing adjustments, it should only apply to adjustments related to compression or transportation. (Doc. No. 57 at 36).

> Because it is undisputed that Continental has not reduced or deducted from the price it receives at the point of first sale any prost-production expenses, Continental respectfully submits that it has properly calculated and paid gas royalties. However, the Court previously concluded that the "shall not deduct" term in the Lease requires Continental to pay royalties on the amount of ONEOK's pricing adjustments. Continental respectfully submits such determination should be confined to those contractual pricing adjustments relating to compression and transportation.

(*Id.* at 36-37). Defendant points to this court's June 9, 2026, Order in support of such a request. This court previously opined, "the fact of the matter is that while the contract between Defendant and ONEOK may permit the deduction of costs for post-production fees, the contract at issue here between Plaintiff and Defendant, does not." (Doc. No. 52 at 8). Defendant argues this could be read to suggest that the "shall not deduct term" applies not only to compression and transportation, but other post-sale, post-production costs as well, and requests clarification as to whether the court construes the Phelps Lease to require payment of royalty on all post-sale, post-production expenses or only those pertaining to transportation and compression.

"Post-production costs are the expenses incurred in bringing the product to market including processing, compression, transportation, marketing, and other costs necessary to prepare raw oil or gas for sale," *Highline Expl., Inc. v. QEP Energy Co.*, No. 1:19-CV-134, 2021 WL 4847999, at *4 (D.N.D. Oct. 18, 2021), *aff'd*, 43 F.4th 813 (8th Cir. 2022); *Burlington Res. Oil & Gas Co. LP v. Texas Cruge Energy, LLC*, 573 S.W.3d 198, 203 (Tex. 2019). The Lease Rider specifically refers to the post-production costs of compression and transportation. The court did not find it necessary in its June 9, 2026, Order to specifically reiterate that the Lease applies only to compression and transportation as the crux of the argument has always been on transportation and compression, not processing, compression, transportation, marketing, and other costs necessary. Even so, Plaintiff argues in its reply, that the court has already held that because the Lease Rider specifically contemplates the compression or transportation of produced substances it deals with post-production costs without caveat or exceptions. (Doc. No. 59 at 10). However, a full reading of the paragraph to which Plaintiff cites in the June 9, 2026, Order, reveals it was specifically referring to transportation and compression costs.

> In this case, the "Lease Rider" specifically states that Defendant shall not deduct any charges related to compressing or transporting the produced substances. There are no caveats or exceptions. The plain language of the "Lease Rider" does not allow for Defendant to make either "deductions" or "adjustments" based on its contract with ONEOK and explicitly states that regardless of the language contained in the Lease, the provisions of the "Lease Rider" will control when there is language to the contrary.

(Doc. No. 52 at 7).

Even so, for the sake of argument the court will provide the requested clarification. The court construes the Phelps Lease to refer only to the post-production expenses relating to compression and transportation. *See Highline Expl., Inc.,* 2021 WL 4847999, at *3 ("Contracts are construed to give effect to the mutual intention of the parties at the time of contracting. The parties' intention must be ascertained from the writing alone, if possible."). The plain language of the Lease

Rider is to transportation and compression costs only. If the parties intended for the remaining post-production costs (processing, marketing, other necessary costs) to be included, the Lease should have either referred to post-production costs generally, or listed the remaining costs, as it did with transportation and compression. As the court has provided clarification, it need not consider Defendant's remaining arguments regarding application of post-production costs.

Plaintiff's breach of contract and declaratory judgment claims, Counts One and Three, directly pertain to the construction of the Lease Rider. Count Two pertains to the breach of obligation to pay royalties under North Dakota Century Code Section 47-16-39.1. Pursuant to § 47-16-39.1, the obligation in an oil and gas lease to pay oil or gas royalties is of the essence in the lease contract and upon failure to pay oil and gas royalties within one hundred fifty days after the oil or gas produced under the lease is marketed, the operator shall pay interest on the unpaid royalties at the rate of eighteen percent per annum until paid. The statute further provides that the prevailing party in proceedings brought under § 47-16-39.1 is entitled to recover court costs and reasonable attorney fees. *Id.*

Pursuant to the Deposition testimony submitted by Plaintiff in response to Defendant's Motion for Partial Summary Judgment and as provided in its instant motion, the supervisor for Defendant, Charles Delhotal, concurred that the Phelps Lease prohibited deductions for post-production costs, and the price received by Plaintiff for royalties was reduced by post-production costs due to Defendant's lease with ONEOK. This was further reiterated by Defendant's Senior Revenue Manager, Pete Knopp. (*See* Doc. Nos. 48-1, 48-2, 56 at 3-10). Defendant's witness testimony alone established it breached the contract by paying Plaintiff less than the Phelps Lease required, even after Defendant repaid those amounts with statutory interest. (*See* Doc. No. 57 at 41 (noting that Defendant reimbursed all amounts erroneously deducted from the oil royalty along

with statutory interest)). Because Plaintiff is the prevailing party and Defendant violated its obligations arising under the Phelps Lease, Defendant shall pay to Plaintiff, statutory interest on the unpaid gas royalties at the rate of eighteen percent per annum until paid, and reasonable costs and attorney fees as prescribed by § 47-16-39.1.

Count Four of Plaintiff's Complaint requests an accounting. Defendant argues that Plaintiff has not demonstrated entitlement to an accounting and the court's guidance on the legal construction of the Lease will aid the parties in working cooperatively toward a damages stipulation that may follow from the court's construction of the lease. (Doc. No. 57 at 41).

The Sixth Circuit has defined an accounting as "a species of disclosure, predicated upon the legal inability of a plaintiff to determine how much, if any, money is due him from another." *Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th Cir. 1972). "[A]n accounting is never ordered as a matter of course." *Stuber v, Taylor*, 200 N.W.2d 276, 280 (N.D. 1972). To warrant an equitable accounting, there must be one or more of the following: "(1) a fiduciary relationship with a duty upon the confidant to render an account; (2) a mutual or complicated account; (3) a particular need for a discovery; or (4) some other basis for equitable jurisdiction." *Id.*; *see Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962) ("[I]n order to maintain such a suit on a cause of action cognizable at law … the plaintiff must be able to show that the 'accounts between the parties' are of such a 'complicated nature' that only a court of equity can satisfactorily unravel them.").

"[T]he touchstone for equity is the lack of an adequate legal remedy." *Lonesome Dove Petroleum, Inc. v. Holt*, 889 F.3d 510, 516 (8th Cir. 2018) (quoting *Superior, Inc. v. Behlen Mfg. Co.*, 2007 ND 141, ¶ 17, 738 N.W.2d 18 (citation omitted)); *see also Dairy Queen, Inc.* 369 U.S. at 478 ("The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is, as [the court] pointed out in Beacon Theatres, the absence of an

adequate remedy at law."). "Courts 'should tread carefully when entering the realm of equitable remedies, fashioning them only when directed to do so by statutes and court rules, when there is no adequate legal remedy, or when the equitable remedy is better adjusted to render complete justice.'" *Id.* (quoting *Burr v. Trinity Med. Ctr.*, 492 N.W.2d 904, 908 (N.D. 1992)).

Plaintiff's Complaint alleges an accounting is necessary. (Doc. No. 1 at 5).

> Given that all of the information as to the royalties that Phelps alleges are due and owning under the Phelps Lease, which have not been because of the wrongful deductions taken from Phelps' royalties buy Continental, are within Continental's exclusive knowledge and possession, Continental should make an accounting respecting the royalty payments that Phelps seeks and is entitled to.

(*Id.*). In its reply brief, Plaintiff argues that accounting is warranted based on the complicated, one-sided nature of the accounted controlled entirely by Defendant. (Doc. No. 59 at 13). Defendant, however, argues that there is no proof of a lack of legal remedy or that discovery provided to Plaintiff was inadequate to apply the law to the facts. (Doc. No. 57 at 41).

The court agrees with Defendant that Plaintiff was provided with adequate discovery, whether through disclosures or deposition testimony. However, the court is also cognizant that the testimony given by Delhotal and rearticulated by Plaintiff in its motion, described a process wherein the "applicable pricing formula" applies at the downstream value and is adjusted by negotiated rates to reach the sales value. (Doc. No. 56 at 7). Furthermore, Delhotal testified that the methodology to paying Plaintiff its gas royalties has not changed since 2013, subject to "corrections" in 2021 and 2022.[3] (*Id.* at 8). Any downstream pricing adjustment for gas would be a product of the third-party contract with ONEOK, and represents pricing terms for compression, processing, and treating. (*Id.* at 9).

---

[3] Plaintiff entered their lease with Defendant in 2012. (Doc. No. 56 at 8). The "correction" refers to Defendant admitting to a wrongful taking of deductions from Plaintiff's oil royalties. (*Id.*).

It is not apparent that even with the discovery provided, Plaintiff would be able to determine how much, if any, money it is due. Even considering the discovery provided, the potential royalty payments at issue are not only tied to the contract between Plaintiff and Defendant but have also become entangled with the lease between Defendant and ONEOK. It is also noteworthy that while Defendant opposes equitable accounting, it has admitted to wrongfully taking deductions from Plaintiff's oil royalties. It is difficult for this court to conclude that there is an adequate legal remedy available to not warrant equitable accounting when it appears Defendant, the party with the most knowledge and information to calculate the royalty payments, erred in its payments to Plaintiff. The contract between the parties, including the additional consideration of Defendant's contract with ONEOK, are of such a complicated nature that equitable accounting is necessary to unravel them and determine what royalty payments may be owed.

## IV. CONCLUSION

For the reasons articulated above, the court **GRANTS** Plaintiff's *Motion for Summary Judgment as a Matter of Law* (Doc. No. 55). Defendant shall provide Plaintiff with an accounting of all costs deducted from and/or assessed to Plaintiff's royalties. Defendant shall also provide an accounting of all royalties that Defendant failed to pay Plaintiff pursuant to the Phelps Lease. Any accounting shall be due within sixty (60) days of this Order.

The parties are directed to confer as to damages and reasonable costs and attorney fees. In the event the parties cannot come to an agreement, Plaintiff may file a motion detailing reasonable costs and attorney fees incurred in this matter.

**IT IS SO ORDERED.**

Dated this 10th day of November, 2026.

*/s/ Clare R. Hochhalter*
Clare R. Hochhalter, Magistrate Judge
United States of America